First case up this morning, it's 419-0290. In re J.L., for the felon is Jessica Harris, he or she, and witnesses in the Frank Rappley. Okay, Ms. Harris, you may proceed. Thank you. May I please report? Counsel. Counsel. I am Jessica Harris with the Office of the State Appeal Defender, and I represent Jose L. I first say conflict of interest existed in this case because Defense Counsel represented Jose, the juvenile at his first jury trial, while having previously represented the victim in this case. The conflict was not weighed because the trial court failed to admonish Jose about the significance of the conflict and the ways in which the conflict could affect, even subtly, his attorney's representation. To weigh the conflict of interest, the court must admonish the defendant about the significance of the conflict, here, in this case, admonish the juvenile. And the court must admonish the defendant, here, Jose, about the subtle ways in which the conflict can affect his representation. The court should consider, when determining whether the juvenile weighed the conflict of interest, the background experience in conflict with the accused. Here, the trial court did not adequately admonish Jose of the significance of the conflict in this case, because it only went over the written waiver with Jose. The state says, well, yeah, but he's had a lot of experience with the court system. That's correct, Your Honor. While it's true that my client has had significant experience with the court system, the state makes no showing that my client has any experience with conflicts of interest. And furthermore, this case is a situation where my client was a child, merely in the courtroom, in the presence of adults, while the adults were speaking and discussing this conflict of interest. The trial court, in this case, never personally admonished Jose about the significance of the conflict or the potential ways it could affect him. Let me ask you a question about the appointed counsel situation in McLean County. The issue in this case was with regard to Arthur Feltman. That's correct, Your Honor. He was the minor's court-appointed public defender? That's correct, Your Honor. And the state filed a motion to disqualify him because of the very issue you're now raising? That's correct. And what was the juvenile's position at that hearing? At the hearing on March 4th, when the court went over the written waiver, the client's position was that he had read the waiver and had signed the waiver. But the waiver is not sufficient in this case. That's not what I asked. Did Mr. Feltman, on behalf of his client, oppose the motion? No, he did not. Why are we here? Why was the motion to disqualify him granted? Because the court is required to admonish the juvenile of the significance of the conflict. Maybe I'm not speaking clearly. The state filed a motion to disqualify him. Why didn't he say, you're right, I'm disqualified, let's get someone else? Why didn't he say that? Yeah. Because apparently he wanted to continue representing Jose. But the issue, Your Honor, respectfully, is that the trial court was required to admonish Jose. No, the trial court could have just said, I'm going to grant the state's motion, couldn't it? The trial court could have done so, but it didn't do so in this case. And for that reason, Mr. Feltman was still representing Jose. Well, I want to go back and ask the lawyer, why didn't the trial court just grant the motion? How many assistant public defenders are there in McLean County? Do we know? I do not know that. And I think the trial court should have granted the motion, which is why we're here today. The trial court should not have allowed Mr. Feltman to represent Jose. Well, I'm trying to figure out what the thinking was of the trial court for just not simply granting the motion. Let me explain. You know, man, the appellate court's a wonderful job, but before we were here, you're looking at a bench that has close to 40 years' experience as trial judges. And I handled all the juvenile court stuff in Champaign County for 12 years. I'm thinking, under these circumstances, the state says this guy should be disqualified, and he's an assistant. It might be a little different if he's hired counsel. He's just my choice as the trial court to represent this kid. And, gee, you know, he's represented the victim and all kinds of stuff going on here. I'm just saying, motion granted. So what's going on? Is there a problem? For instance, did the juvenile himself ever say, oh, no, I want Arthur Feltman. He's the only guy who can defend me in this case. He did not say. He said he did in the waiver. He said that the court asked him. He did say that he wanted Mr. Feltman to represent him. But I think it's important for this court to consider that when Jose was being asked questions, he was just agreeing with the court. And the court, at any point, even if this court disagrees and believes the trial court should have granted the state's motion to disqualify, it didn't. And so we're here today because Feltman, attempted to get my client to waive the conflict of interest. But to allow my client to waive that conflict of interest, the trial court, in this case, had to personally admonish my client of the significance of the conflict. When the trial court went over the written waiver with Jose at that third hearing where the conflict was discussed, the trial court did not admonish Jose of the significance of the conflict, Your Honors. The court merely went over the contents of the written waiver. The trial court, in this case, treated the written waiver merely as a procedural tool, a hump that needed to be jumped over so that counsel could continue to represent Mr. Feltman. The trial court here had a duty to look at this conflict and to see, obviously, Mr. Feltman is representing the victim in this case, in a case where the victim eventually doesn't even identify my client as the person who stabbed him. Do we know whether or not there is an office of the McLean County Public Defender or in the status in some counties there are just attorneys who are routinely appointed to represent people in juvenile delinquency or criminal cases? That's my understanding, Your Honor. You don't have specific... Which is your understanding? That there are specific attorneys that are assigned to represent the juvenile cases. But there's not an office, Champaign County, the Office of Public Defender, and then the Public Defender just picks people, assistants, to handle various cases. That's not McLean County? I'm not sure how McLean County works. I would assume it's something like that. But I assume... I also know, having handled... I'm familiar with Mr. Feltman, that he handles the majority of the juvenile cases in that county. And because of his representation of the victim in this case, the trial court had a duty to go over that conflict of interest. Ms. Harris, before you move on, I'm going to go back. You were addressing a point, and that was what I'll say, for lack of a better term, was acquiescence. The minor listens to the admonishments and basically, for lack of a better term, agrees. Your position is a per se conflict. Best case scenario, how would the court have achieved an appropriate waiver? Absolutely, Your Honor. So first, I think that the court should have informed my client that his attorney, Mr. Feltman, told the court at a prior hearing on the motion to disqualify that he would not attempt to interview the victim in this case. That's a significant fact that could affect the minor's decision to have his attorney represent him or not. Because that specific fact, had counsel potentially have gone to seek to interview the victim, then perhaps counsel would not have pursued the self-defense strategy because he would have taken the time beforehand to learn what the victim was going to say. So I think at the very minimum, Your Honor, the trial court should have admonished Jose that his attorney was not going to attempt to interview the victim. Was that argued by the state when it was mentioned by defense counsel that he was not going to interview the victim? Your Honor, I do not recall... I'll try to get that answer for you on rebuttal, but I do recall the state just expressing to the court that it's possible that the attorney would have crossed-examined the victim more or less. But I will have to double-check to see whether or not the state made that specific argument. Other things that the court should have done would explain to Jose how this cross-examination would be limited in terms of the impeachment. And I think it's also... The Supreme Court in Robinson, when it found that a conflict waiver was sufficient, the trial court told the defendant that it wants it, quote, rip him off, make a liar out of him if he can do so. The court in this case didn't even go close to that. I'm not saying that that's something that's necessary. That's just a way for the court to see what was missing in this case, how much was missing in this case. Even if the trial court should have granted this motion, the trial court didn't. The trial court allowed Mr. Fulman to continue to represent Jose despite this conflict of interest. You might expect to see the court test the minor's knowledge and understanding. Yes, Your Honor. Memorialize that on the record. I'm sorry? And to memorialize that on the record. Yes, Your Honor. To show a knowing and intelligent waiver. There's no showing that Jose, a 16-year-old juvenile, had a knowing and intelligent waiver. The court did not explain to him impeachment. The court did not explain to him cross-examination. This was his first jury trial. He did not understand the significance or ramifications of this conflict, Your Honors. And moreover, the Supreme Court in Robinson also remarked that other courts have questioned whether adult defendants possess, quote, the legal sophistication to weigh the alternatives and intelligently abandon the rights of conflict-free counsel. That shows that the Supreme Court has seen other courts have found that adults even may have a hard time understanding the complex nature of a per se conflict of interest. And that's why, in this case, the standard has been higher because we have a 16-year-old juvenile at his first jury trial with no indication that there was prior understanding of a conflict of interest. Because Jose did not knowingly waive the conflict of interest, he asked that this court reverse and remand his case during the trial. In the alternative, this court should also reverse and remand Jose's case during the trial because counsel was ineffective for stipulating that Jose stabbed EM. To show that counsel was ineffective, Jose has to show that his performance was deficient. Despite counsel's performance was deficient in this case, because despite knowing beforehand, before trial, that an older guy stabbed EM, counsel still agreed to stipulate that my client, Jose, a 16-year-old child, stabbed the victim in this case. In the video, which was also presumably disclosed to defense counsel because defense counsel does say on the record that he had a pretty good idea pursuant to the discovery that he received, what the victim was going to say. But if that's the case, then counsel should have known that the victim went back and forth, and that the victim identified ultimately that an older man, or the father, that my client's father is the person who stabbed him. Counsel would have been aware of this information prior to trial, which makes that unsound trial strategy. It was not sound trial strategy for counsel to agree that his client stabbed the victim when the victim identified someone else. That deficient performance prejudiced Jose in this case because there's a reasonable probability that the result of the proceedings would have been different. The jury asked about the specific stipulation of issue. The jury asked the court, are the evidence stipulation considered as fact by both state and the defendant, specifically number 9? That shows that the jury, when considering to determine the guilt or innocence of Jose, determined relied on that stipulation. Had that stipulation not been there, there is a reasonable probability that the outcome would have been different in this case. ... If the court has no further questions, Jose, respectfully request this court. Okay, I see none. Thank you. Ms. McClay? ... ... Can you please report? Counsel? ... ... ... ... ... ... ... ... ...  ... Ms. McClay, let me ask the same questions I asked Ms. Harris and see if you can provide any additional insight. This is a court-opponent counsel. Why didn't the trial court just grant the motion? It's obvious you don't have to be looking deeply into the state's motion and the discussion concerning it to realize there's a potential problem here. We've got this bunch of potential court-opponent counsels to replace Arthur Feldman. And, of course, this is one of those few areas of law where, if a mistake is made with regard to counsel, that there's no such thing as harmless error. So, why is the court fighting this and wrestling with it when it's the court's choice of counsel? It wasn't the juvenile's. This might be a higher case if it were hired counsel. Oh, this is the guy I want, says the kid. I don't understand it. And, also, McLean County is a pretty big county in the 4th District. Don't they have multiples like Sigmund and Champaign County, multiple lawyers from whom, or to whom the court could look for an appointment? I am not sure of the setup in McLean County. I do know, in the records someplace, they said something about Arthur Feldman, said, I'm the juvenile attorney. That's someplace in the record. So, I don't know if he's the main guy for juveniles. Then, they invoked the appearance, and then juvenile, they all went to Feldman. Anyway, I think there were reports in this case that there is a knowing later, even of the significance of defense counsel's representation of the victim. The court advised This subject actually came up in three separate hearings, and it was discussed extensively in front of the defendant. Well, one inheritance, he wasn't even there. One inheritance, he wasn't there. But, two hearings, the defendant and his mother are both present. And it's discussed extensively, pages and pages of argument on this issue. Can you point to the point in the record where the defendant and his mother were informed as to ramifications of the conflict, specifically? It is discussed at a February hearing. I'm not sure what the date was at, but they're not talking specifically to the defendant at that hearing. But, at March 4th hearing, defense counsel represents to the court that, quote, prior to coming into the hearing today, I went over to the minor and to his mother a written waiver in potential conflict. End quote. Defendant's written waiver memorialized the discussion between defendant and defense counsel and stated the limitation on cross-examination of the victim. The court referenced that signed waiver at this hearing and started reading each point in the written waiver, asking the defendant what he understood. It started reading each point in the written waiver. It's talking about the waiver. It did not read the specific point about limitations of cross-examination. The fact is in the written waiver and they're talking about the written waiver. The written waiver states that defendant understands defense counsel may ask EM about the case in which he represented EM, but only as it relates to potential impeachment of EM as a witness. Even though the defendant is not told what impeachment is, what cross-examination is, but only means that there's a limitation on the questions that defense counsel may ask EM. Even with this kid's experience, do you seriously think he understood the significance of counsel saying I'm not even going to interview the victim in this case, who he knows has given inconsistent statements about the identity of the person who stabbed him. I'm not exactly sure what the defendant is capable Well isn't that kind of the whole point here? Aren't we supposed to have a record that shows us that the defendant knowingly waives the conflict and that would seem to imply that it's explained to him in sufficient detail in language he's capable of understanding of how significant this may be. I think that the Supreme Court has stated that the duty to admonish the defendant as to the general nature of the conflict does not mean that the trial court must painstakingly detail every potential ramification. So everything that could possibly come up when there's a conflict did not have to be explained to the defendant. But here we don't have a whole bunch of little subtleties. We've got one huge hole. That's the defense counsel saying, I'm not going to interview the victim. What defense counsel voluntarily agrees not to interview the victim in a criminal case? At least make an effort to interview the victim. Let's think a minute. Oh, he was the victim's attorney until two weeks before trial so what's the likelihood he's going to be willing to talk to him? Many defense counsel may say, yeah, but I'd try to interview him but they don't want to talk to me. Well, wait a minute. Two weeks ago he was his lawyer. So pretty good shot that this guy's willing to talk to him. Would it maybe be significant to whether he really wants to assert his self-defense or not for him to find out from the victim who he's going to identify? Are you going to identify my client or are you going to identify my client's father? I think on the record the I'm not going to interview him because I know what he's going to say. From police reports. Not verbatim statements. Police reports. Summaries of what cops write down later of what they remember somebody tells them, right? And that's the extent to which this defense attorney is going to go and yet he's going to assert a self-defense without putting his client on the stand. How hard is that? This case was hard for the defense counsel? The eyewitnesses? Would it maybe have been easier if he just got out? Would it maybe have been easier if he'd interviewed the victim and realized oops, wait a minute, the self-defense I don't need because he's not going to identify my client. He's going to go with one of his previous statements that it was my client's father. And he has a pretty good explanation for why. Because the defendant is actually involved with another one of the juveniles and the father was the closest to him. The victim himself said that, right? The victim, my defense counsel knew that the victim was stabbed or heavily unmedicated after the defense and he's making all these statements. So I think the defense counsel kind of discounted what he would have said. Basically he said, I don't know defendant did it and defendant's father. So he's going to discount the identity of another person rather than, but he's going to accept the one identifying his client. But he's going to discount the one identifying somebody else. The two eyewitnesses standing very close to the client identified the defendant as the perpetrator. Sure. But it's not his job to corroborate the two witnesses. It's his job to establish that maybe it's somebody else and create some reasonable doubt. How do you do that by stipulating to the not just the stabbing, but stipulating that it was my client that did it? I think the defense counsel was in between a rock and a hard place and he had to come up with a defense and he formulated a self defense. What might have made it easier? Maybe interviewing the victim? Well, then you get into an appears to be a given propriety. Bingo. Which is why he shouldn't have been there in the first place. He's going to interview his client from two weeks ago. He was his lawyer until two weeks before the trial. I'm with Justice Steinman. I'm having a real hard time even comprehending how the trial court could agree with this in any fashion. And why the state wasn't just screaming up and down. Jumping up and down. Because from the record, it's kind of wasay. Of course, it's a cold record and I accept that. But you don't see the redeeming language that you might see if the prosecutor is really aggressively pursuing the conflict. The subject came up at three separate hearings and I think that whether this does show that knowing and understanding of the conflict. A defendant must actually understand how conflict could affect his attorney's representation before his right to a conflict free attorney can be knowingly waived. How did this kid understand that? Well, this is your waiver. You signed it, right? You still want Mr. Feldman, right? They discussed with him in court that there was a limitation on But shouldn't that be the red flag right there? When a defense attorney is saying, I'm not going to interview the victim in a one-on-one stabbing. I'm not even going to try to interview the victim. Who will probably talk to me. I think that the rule is that there needs to be a waiver, an understanding waiver of the significance and knowing the significance of the defense counsel's representation. I think the record shows in this case, it was discussed at three separate hearings and they came up with a written waiver and I think the defendant and his mother signed off on that and I think that given the court record and the background of the defendant he had two separate cases Any of them involve a conflict? Any of them involve a conflict? Because they didn't inquire. Court didn't inquire. Counsel didn't inquire on the record. There's absolutely no indication in this record that this kid has ever been involved in a conflict situation before. On the Hudson case that I cited in my brief, the defendant was convicted twice of burglary and arrested on several occasions for other charges that were dismissed. The court found that help was not significant and finding that there was a waiver. Adult or juvenile? May I interject? As I listen to the dialogue between you and Justice DeArmond, I'm struck by the fact that what you're arguing is what the waiver did do in the affirmative, it talks about expecting to cross-examine EM, it talks about asking EM about the case in which you represented EM and as it relates to potential impeachment. So we're talking about things that the attorney intended to do. But what the waiver doesn't cover and the court failed to go over with the defendant is what defense counsel will not do. That to me, and I think it's close to the point Justice DeArmond is attempting to make here, but that for this court is really troubling. It's an issue where we need some memorialization from the defendant that these things were both discussed and he understands. So I point that out just because I think that's really for me the simplest way of looking at this is talking about what counsel is not going to do as opposed to what counsel is going to do and what's in the waiver and what isn't. I'm using the new waiver. It says that there would be a limitation on cross-examination. That would mean what defense counsel would not be cross-examining the victim on other things. Why did they just say that? There's a limitation on cross-examination. What's a 16-year-old kid going to understand that? How about he says, I'm not going to talk to the victim? And not having that arrow in your quiver at trial, isn't that prejudicial to the defendant? The inavailability of the opportunity to cross? I do believe You're doing the best you can with what you got. I think the record shows that given the admonitions and many court hearings and the defendant's background and the written waiver, which actually sets a limit on cross-examination that the defendant is kind of in the waiver. Would you like me to address another issue? As you wish. Defense counsel was not inspective when the testimony came out unexpectedly. There were two eyewitnesses. Why is it unexpected? Because you didn't talk to him. In this case, there were two eyewitnesses to the side standing right there and they said, defendant to. And I think that the victim the victim's prior to trial interviews were marred by the fact that he was had been stabbed and had been shot and he was medicated at the hospital. So when he said he did not know who did it and he said defendant did it and he said defendant did it so I think that this is what defense counsel was faced with prior to trial. So he formulated self-defense and stipulated to break bodily harm and also in line with the theory of self-defense he stipulated that defendant did the nail. Explain to me the logic of stipulating to the identity. Let's assume for a minute we're going to try to establish a self-defense. Why in the world would you stipulate to the identity when there is that little bit of fogginess out there in the evidence? And even if there wasn't, why would you go ahead and stipulate to identity? Because once you've done that you've pretty well made the state's case. I mean you just basically stipulated the case away. Break bodily harm is this guy. Now you're going to try to hinge the entire case on a self-defense where you're not going to call the victim or call the defendant which kind of ties your hand behind your back trying to establish what the state of mind of the defendant is. Instead he tried to utilize this third party hearsay without even a decent argument when the objection came as to how it might constitute an exception. I couldn't think of the exception but I would have liked to have thought that maybe counsel would. Now I think the defense counsel thought that self-defense was going to be a good way to present a defense for a defendant and he did not anticipate that the victim was going to insist and try contrary to what he said before that the defendant's dad didn't stand. So I think it was all on the defense counsel and the defense counsel had to figure out what to do now and he carefully wove you know whether the defendant did it or did not do it into his closing argument. He said he copied the state and says the state had approved two things. Defendant caused break bodily harm and whether there was legal justification for it. So he laid out the prongs of the issues and then he laid out what each witness had testified to and he was careful not to say you know try to confuse the jury and say defendant did it, defendant didn't do it, it was self-defense. He didn't confuse the jury but I think he did the best point he had. It was a matter of trial strategy and up to his discretion what he argued. Any other questions? Okay, thank you counsel. Ms. Harrison you were about? Briefly. Okay. First I'd like to address the point that the waiver indicates that counsel explained to Jose the conflict. This court and people who were held there in the same situation when the defense counsel told the court to explain the significance of the conflict to the client that there was no way of knowing what counsel told the defendant at the time of the waiver lest it could not be said the defendant was adequately informed of the significance of the conflict. And finally I'd just like to quote from Kohl. Courts should attempt to quote indulge every reasonable presumption against waiver and not presume that the essence and in this case, your honor, my client did not waive the conflict. Okay. Thank you counsel. We'll take this matter under advisory in recess for a few moments.